[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13310

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BYRAMJI MONECK JAVAT,

Defendant -Appellant,

PENNCO, LLC,
CALH HOLDING CORP.,

Intervenors-Appellants.

———————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cr-20668-DMM-1

———————————————

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

After Byramji Javat pleaded guilty to conspiracy to commit wire fraud, the district court entered a forfeiture money judgment against him.  The government then moved for a preliminary forfeiture of substitute property—a condominium in Washington, D.C., and a warehouse in Calhoun, Georgia—because it was unable to collect on the money judgment.  Pennco, LLC and Calh Holding Corp. moved to intervene, claiming that they were the sole owners of the condominium and warehouse.  The district court denied Pennco and Calh Holding's motion to intervene, granted the government's motion, and entered a preliminary order of forfeiture of the condominium and warehouse.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2019, a federal grand jury indicted Javat for conspiracy to commit wire fraud.  At Javat's bond hearing, his counsel identified the condominium and warehouse as "two pieces of real estate that [were] owned by the family trust of Mr. Javat" that could serve as security for a bond.  Javat's counsel explained that the

condominium and warehouse were owned by "two different enti-ties," both of which were owned by the "Javat family trust," and that "[w]hen he s[aid] it's a trust, it's the family[;] [t]he family has ownership of the entity that is the titleholder of the properties."

On the morning of trial, Javat pleaded guilty. At sentencing, the district court entered a general order of forfeiture under Federal Rule of Criminal Procedure 32.2(b)(2)(C). After holding a hearing to determine the amount of proceeds traceable to Javat's wire fraud conspiracy, the district court entered a forfeiture money judgment in that amount.

Five months later, the government moved for a preliminary forfeiture order for substitute property to partially satisfy the un-paid money judgment and identified the condominium and ware-house as substitute assets. In support of its motion, the govern-ment submitted the declaration of an agent with the United States Food and Drug Administration's Office of Criminal Investigations. In his declaration, the agent averred that the entire amount of the forfeiture money judgment remained unpaid, that Javat "ha[d] not disclosed the location of forfeitable property sufficient to satisfy it," and that, based on his investigation into Javat's assets,

> it is my conclusion that all of the proceeds from the crime cannot be located upon the exercise of due dil-igence; have been transferred or sold to, or deposited with, a third party; have been placed beyond the ju-risdiction of the court; have been substantially dimin-ished in value or have been commingled with other

property which cannot be divided without diffi-
cult[y].

Javat opposed the motion, arguing that (1) the district court
lacked jurisdiction to enter a preliminary forfeiture order of the
condominium and warehouse because neither property was lo-
cated in Florida; (2) substitute asset forfeiture was unavailable un-
der 18 U.S.C. section 981—the applicable forfeiture provision—be-
cause section 981 did not incorporate the "substantive right" to
substitute asset forfeiture provided by 21 U.S.C. section 853(p), and
(3) even if substitute asset forfeiture was available in a section 981
forfeiture proceeding, the government had not met its burden to
prove either Javat's ownership of the condominium and ware-
house or the unavailability of the proceeds of Javat's crime. Javat
also requested an evidentiary hearing pursuant to Federal Rule of
Criminal Procedure 32.2.

At the same time, Pennco and Calh Holding moved to inter-
vene in Javat's criminal proceeding under Federal Rule of Civil Pro-
cedure 24(a) and (b) because, they said, they owned the condomin-
ium and warehouse. Pennco claimed to be the sole owner of the
condominium and Calh Holding claimed to be the sole owner of
the warehouse. Both argued that (1) the district court lacked juris-
diction to order preliminary forfeiture of the condominium and
warehouse because the properties weren't located in Florida,
(2) forfeiture of the properties was improper because Javat didn't
own them, and (3) forfeiture of their property without notice or an

opportunity to be heard in Javat's criminal proceeding would violate their due process rights.

The district court granted the government's motion for preliminary forfeiture of the substitute properties. First, the district court concluded that it had jurisdiction to order preliminary forfeiture of the out-of-state condominium and warehouse under 21 U.S.C. section 853(l), which gave the district court authority to enter forfeiture orders "without regard to the location of any property which may be subject to forfeiture." Second, the district court concluded that substitute asset forfeiture was available because 28 U.S.C. section 2461 explicitly integrated section 853's procedures—including the availability of substitute asset forfeiture—into all forfeiture proceedings, including forfeiture proceedings brought under section 981. Third, the district court concluded that the government had satisfied its burden under section 853(p)—the substitute asset forfeiture statute—to establish that Javat had an interest in the condominium and warehouse based on Javat's counsel's representations during the bond hearing, so an evidentiary hearing was unnecessary. And fourth, the district court concluded that the government had met its burden under section 853(p) to establish that substitute asset forfeiture was available based on the agent's declaration.

The district court entered a preliminary order of forfeiture of the condominium and warehouse. Javat, Pennco, and Calh Holding appeal the district court's orders.

## STANDARD OF REVIEW

In reviewing a preliminary forfeiture order, we review the district court's legal conclusions de novo and findings of fact for clear error. *United States v. Goldstein*, 989 F.3d 1178, 1202 (11th Cir. 2021). A factual finding is clearly erroneous "when a review of the entire record leaves us with the definite and firm conviction that a mistake has been committed." *Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1357 (11th Cir. 2020) (internal quotation marks omitted). We review the district court's denial of a motion to intervene as of right de novo and denial of permissive intervention for an abuse of discretion. *See Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir. 2008). A district court's denial of an evidentiary hearing is reviewed for an abuse of discretion. *See United States v. Dynalectric Co.*, 859 F.2d 1559, 1580 (11th Cir. 1988). And we review de novo questions concerning our subject matter jurisdiction. *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006).

## DISCUSSION

Pennco and Calh Holding argue that the district court erred in denying their motion to intervene and in entering the preliminary order of forfeiture. Javat argues that the district court erred in entering the preliminary order of forfeiture. For the reasons that follow, we conclude that we lack jurisdiction over Pennco and Calh Holding's appeal and affirm the district court's preliminary order of forfeiture as to Javat.

*Pennco and Calh Holding's Appeal*

Before we address Pennco and Calh Holding's arguments, we must first consider whether we have jurisdiction over their appeal. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) ("Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute.").

The district court's denial of Pennco and Calh Holding's motion to intervene

We have "provisional jurisdiction" under the "anomalous rule" to determine whether the district court properly denied Pennco and Calh Holding's motion to intervene. *Fox*, 519 F.3d at 1301. "If the district court correctly concluded that [Pennco and Calh Holding] were not entitled to intervene of right and did not clearly abuse its discretion when it denied permissive intervention," then "our jurisdiction evaporates because the proper denial of leave to intervene is not a final decision." *See id.* (internal quotation marks omitted). But "[i]f the district court erred when it denied intervention of right or clearly abused its discretion when it denied permissive intervention," then "we have jurisdiction to reverse the denial of the motion to intervene." *Id.*

The government argues that the district court properly denied Pennco and Calh Holding's motion to intervene because section 853(n)—and not Federal Rule of Civil Procedure 24—provides the exclusive means for third parties to challenge a criminal

forfeiture.  We agree.  As we have explained, "Congress has created one—and only one—means for interested third-parties to partici-pate in a criminal-forfeiture proceeding:  asserting a 'legal right, ti-tle, or interest' sufficient for standing in an ancillary proceeding, 21 U.S.C [section] 853(n)." *United States v. Mar. Life Caribbean Ltd.*, 913 F.3d 1027, 1035 (11th Cir. 2019); *see also United States v. Dav-enport*, 668 F.3d 1316, 1321 (11th Cir. 2012) (explaining that a third party's "sole mechanism for vindicating her purported interest in the forfeited currency was within the context of the ancillary pro-ceeding prescribed by [section] 853(n) and [r]ule 32.2(c)").  Pennco and Calh Holding jumped the gun by moving to intervene at the preliminary forfeiture stage, before the district court had a chance to hold ancillary proceedings under rule 32.2(c) and section 853(n).

We are unpersuaded by Pennco and Calh Holding's coun-ter-argument that the district court's denial of intervention violated their due process rights.  First, assuming Pennco and Calh Holding are, in fact, the sole owners of the condominium and warehouse, the preliminary forfeiture order did not give the government any interest in the properties.  Rule 32.2 provides that the preliminary forfeiture order "remains preliminary as to third parties until the ancillary proceeding is concluded under Rule 32.2(c)."  Fed. R. Crim. P. 32.2(b)(4)(A).  And second, the section 853(n) ancillary proceeding affords Pennco and Calh Holding the opportunity to be heard and to be awarded relief if they show a cognizable interest in the condominium and warehouse.  Section 853(n) therefore "pro-vides all of the process due." *See United States v. McHan*, 345 F.3d

262, 269–70 (4th Cir. 2003) (rejecting third parties' argument that due process required that they "be given an opportunity to interject themselves into the sentencing phase of the criminal case against [the defendant] because [the defendant's] sentence had the *potential* to affect their property interests").

Because the district court didn't err in denying Pennco and Calh Holding's motion to intervene as a matter of right and didn't clearly abuse its discretion in denying permissive intervention, we lack jurisdiction over their appeal of that order. *See Fox*, 519 F.3d at 1305. We therefore dismiss their appeal of the district court's order denying their motion to intervene.

### The district court's preliminary order of forfeiture

We also lack jurisdiction over Pennco and Calh Holding's appeal of the district court's preliminary order of forfeiture. Although the district court's preliminary order of forfeiture was final as to Javat, it "remain[ed] preliminary" as to Pennco and Calh Holding until their ownership interests in the condominium and warehouse were determined in an ancillary proceeding. *See United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019) (quoting Fed. R. Crim. P. 32.2(b)(4)(A)). Pennco and Calh Holding had no basis to appeal the preliminary order of forfeiture as to Javat. *See United States v. Cone*, 627 F.3d 1356, 1358 (11th Cir. 2010) ("Nowhere do the provisions [of section 853(n) or rule 32.2] grant petitioners a private cause of action or right to appeal a court's ruling outside of an ancillary forfeiture proceeding."). Accordingly,

we dismiss their appeal of the preliminary order of forfeiture. *See id.* at 1359.

## Javat's Appeal

Javat argues that the district court erred in entering the preliminary order of forfeiture of the condominium and warehouse for four reasons. First, Javat argues that the district court "lacked jurisdictional and statutory authority to forfeit" the condominium and warehouse. The district court lacked "statutory jurisdiction," Javat contends, because it did not determine whether Javat had an ownership interest in them before entering the preliminary order of forfeiture. And, Javat argues, the district court did not have jurisdiction to forfeit title of properties located outside of Florida under the common law "local action rule."

Second, Javat argues that the district court incorrectly concluded that the government had met its burden under section 853(p) to prove that Javat had rendered the previously forfeited property unavailable. The agent's declaration was insufficient to satisfy the government's burden of proof, Javat says, because it was "conclusory."

Third, Javat argues that the district court abused its discretion in denying his request for an evidentiary hearing to determine the extent of his ownership in the condominium and warehouse. According to Javat, an evidentiary hearing was required to determine Javat's ownership in the properties because his counsel's statement at the bond hearing "simply represented that [Javat] *and*

*his supporters*, including his family, were proposing to have those real properties pledged as collateral to secure a bail bond" and was not "evidence of [Javat's] ownership of the property."

Finally, Javat argues that the district court incorrectly concluded that substitute asset forfeiture was available in section 981 forfeiture proceedings because section 981 does not incorporate the "substantive right" to substitute asset forfeiture provided by section 853(p). For the following reasons, we conclude that the district court did not reversibly err in entering the preliminary order of forfeiture.

## The district court had the statutory authority to order preliminary forfeiture of the condominium and warehouse

Section 853(p) permits substitute forfeiture of "any other property of the defendant." 21 U.S.C.§ 853(p)(2). Javat argues that the district court lacked "statutory authority" to order preliminary forfeiture of the condominium and warehouse because they were "owned by another party."

Even assuming (without deciding) that section 853(p)(2) requires the government to make a preliminary showing that the defendant has an interest in the substitute assets before a district court may order preliminary forfeiture, the district court did not err because it specifically found that Javat had some interest in the condominium and warehouse, and the finding was supported by the evidence. The district court, relying on Javat's counsel's representations at the bond hearing, found that Javat "ha[d] represented his

ability to mortgage the properties which implie[d] that [Javat] ha[d] some interest in the properties." And based on this finding, the district court "conclude[d] that the Government ha[d] established that [Javat] potentially ha[d] an interest in the substitute property." The district court did not err in relying on Javat's counsel's representations in determining that Javat had an interest in the condominium and warehouse.[1] *See* Fed. R. Crim. P. 32.2(b)(1)(B) ("The court's determination may be based on evidence already in the record . . . ."); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent . . . ."); *Laird v. Air Carrier Engine Serv., Inc.*, 263 F.2d 948, 953 (5th Cir. 1959) ("When [an attorney] speaks in Court, whether it be [i]n a formal trial or in an informal pretrial, he speaks for and as the client.").

---

[1] Javat's reliance on our decision in *United States v. Gilbert*, 244 F.3d 888 (11th Cir. 2001), *superseded by rule on other grounds as recognized in United States v. Marion*, 562 F.3d 1330 (11th Cir. 2009), is misplaced. *Gilbert* addressed a forfeiture order that was entered before rule 32.2 authorized preliminary orders of forfeiture and therefore has no bearing on our analysis here. *See Marion*, 562 F.3d at 1341.

### The district court had jurisdiction over the condominium and warehouse

Javat argues that, under the "local action rule," the district court didn't have jurisdiction over the condominium and warehouse because they were located outside of Florida. The local action rule is "a federal common law rule barring district courts from exercising jurisdiction over actions directly affecting land in a different state." *In re Icenhower*, 757 F.3d 1044, 1050 (9th Cir. 2014); *see also Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987). But common law principles are abrogated where a statute "speak[s] directly to the question addressed by the common law." *See Republic of Honduras v. Philip Morris Cos., Inc.*, 341 F.3d 1253, 1259 (11th Cir. 2003) (quoting *United States v. Texas*, 507 U.S. 529, 534 (1993)).

Here, section 853(l) "speak[s] directly" to the district court's jurisdiction over the condominium and warehouse. It says that "[t]he district courts of the United States shall have jurisdiction to enter orders as provided in this section *without regard to the location of any property* which may be subject to forfeiture under this section or which has been ordered forfeited under this section." 21 U.S.C. § 853(l) (emphasis added)); *see also United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 690 (5th Cir. 2013) (rejecting argument that the district court lacked jurisdiction to order forfeiture of "property located outside of its jurisdiction" under the "*in custodia legis* doctrine" because "that argument would be precluded by the terms of . . . 21 U.S.C. [section] 853(l)"). Because

the district court found that Javat had some interest in the condominium and warehouse, it had jurisdiction over the properties "without regard" to their location. *See* 21 U.S.C. § 853(l).

### The district court did not err in concluding that the government met its burden to prove that Javat had rendered the proceeds of his crime unavailable

Relying on the agent's declaration, the district court concluded that the government met its burden under section 853(p) to prove that Javat had rendered the proceeds of his crime unavailable. Javat argues that the agent's declaration was insufficient to satisfy section 853(p)'s requirements because it was "conclusory" and did not identify "any wrongful acts by [Javat] to dispose of such assets, or any other of the statutory prerequisites." We disagree.

Section 853(p) provides that the court "shall order the forfeiture of any other property of the defendant" if, "as a result of any act or omission of the defendant," the forfeitable property

  (A)  cannot be located upon the exercise of due diligence;

  (B)  has been transferred or sold to, or deposited with, a third party;

  (C)  has been placed beyond the jurisdiction of the court;

  (D)  has been substantially diminished in value; or

  (E)  has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1)(A)–(E).

As the district court noted, the agent's declaration "simply track[ed] the statutory language without providing further details regarding *how* the Government determined that [Javat] has made the tainted property unavailable." But, as the district court explained, we've held that a federal agent's declaration which said that the defendant had "dissipated or otherwise disposed of the proceeds of his crimes"—and nothing more—was "sufficiently specific in identifying [the defendant's] acts and omissions for the district court to rely on it as the basis for ordering forfeiture under the substitute asset provision." *United States v. Seher*, 562 F.3d 1344, 1373 (11th Cir. 2009).

Here, the agent's declaration is no less specific than the one we approved in *Seher*. The agent's declaration was sufficient for the district court to rely on in concluding that the government had met its burden to show that section 853(p)(1)'s requirements were met. Thus, the district court did not err in relying on the agent's declaration to find that Javat had rendered the proceeds of his crime unavailable.

## The district court did not abuse its discretion in denying Javat's request for an evidentiary hearing, and any error in failing to hold a hearing was harmless

The district court ordered preliminary forfeiture of the condominium and warehouse without holding a hearing. Javat argues that the district court abused its discretion because the district court "lacked evidence of [Javat's] ownership of the property, and [Javat] had asked for an evidentiary hearing." Javat is correct that rule 32.2

says that "[i]f the forfeiture is contested, on either party's request, the court *must* conduct *a* hearing after the verdict of finding of guilty." Fed. R. Crim. P. 32.2(b)(1)(B) (emphasis added). But the district court had already held a hearing before ordering preliminary forfeiture of the proceeds from Javat's wire fraud conspiracy. The district court did not abuse its discretion in denying Javat's request for a second hearing.

But even assuming the district court abused its discretion by not holding a hearing before ordering preliminary forfeiture of the condominium and warehouse, we have held that "harmless-error analysis clearly applies" to a district court's failure to follow rule 32.2's requirements. *See United States v. Farias*, 836 F.3d 1315, 1330 (11th Cir. 2016) (citing Fed. R. Crim. P. 52(a)). Here, any error was harmless.

Javat argues that the district court's failure to conduct a hearing before entering the preliminary order of forfeiture left the "issue of ownership" of the condominium and warehouse "unresolved." But contrary to Javat's assertion that his counsel "simply represented that [Javat] *and his supporters*, including his family, were proposing to have [the condominium and warehouse] pledged as collateral to secure a bail bond," his counsel unequivocally explained at the bond hearing that "*[t]he family* has ownership of the entity that is the titleholder of the properties." The record was clear that Javat—and not others outside his family—had an interest in the properties. And, as we've explained, resolution of the extent of Javat's, Pennco's, and Calh Holding's ownership interests

in the condominium and warehouse is deferred until the section 853(n) ancillary proceeding.  *See* 21 U.S.C § 853(n); Fed. R. Crim. P. 32.2(b)(2)(A), (c).  Thus, the district court's failure to comply with rule 32.2(b)(1)(B)'s hearing requirement was harmless because there was no "issue of ownership" for the district court to resolve before ordering preliminary forfeiture of the condominium and warehouse.

<u>The district court did not err in concluding that substitute asset forfeiture was available in section 981 forfeiture proceedings</u>

Finally, the district court did not err in ordering substitute asset forfeiture in Javat's section 981 forfeiture proceeding.  Section 853's "procedures"—with an exception not relevant here—"apply to all stages of a criminal forfeiture proceeding."  28 U.S.C. § 2461(c).  Javat argues that section 2461(c) did not incorporate section 853(p) into section 981 forfeiture proceedings because section 853(p) is not a "procedure" but is instead a "substantive" provision. In support, Javat points out that a different statute—18 U.S.C. section 982(b)(1)—incorporates the "provisions" of section 853 and argues that Congress' use of the term "procedures" instead of "provisions" in section 2461(c) indicates that Congress intended to distinguish between "procedural" and "substantive" portions of section 853.  Whatever the difference between section 853's provisions and procedures, we agree with the district court that section 853(p) is a substitute asset forfeiture "procedure."

The Supreme Court has called section 853(p) the substitute asset forfeiture "procedures."  *See Honeycutt v. United States*, 137

S. Ct. 1626, 1634 (2017) (describing "the procedures outlined in [section] 853(p)"). And every circuit court that has reviewed the issue has said that section 853(p) is a forfeiture "procedure" that is "incorporated by reference in [section] 2461(c)." *See United States v. Valdez*, 911 F.3d 960, 965 (9th Cir. 2018); *accord United States v. Gregoire*, 638 F.3d 962, 971 (8th Cir. 2011); *United States v. Alamoudi*, 452 F.3d 310, 313–14 (4th Cir. 2006). As the Ninth Circuit explained, "[w]hatever distinction might exist between 'provisions' of [section] 853 and 'procedures' of [section] 853 in [section 982(b)(1) and section 2461(c)], that distinction is immaterial here because [section] 853(p) is a procedure within [section] 853." *Valdez*, 911 F.3d at 966.

## CONCLUSION

In sum, we conclude that Pennco and Calh Holding's appeal is due to be dismissed for lack of subject-matter jurisdiction. We also conclude that the district court's preliminary order of forfeiture against Javat is due to be affirmed.

APPEAL DISMISSED AS TO PENNCO AND CALH HOLDING AND AFFIRMED AS TO JAVAT.